## Barris v. Pittsburgh and New England Trucking Co.

*Harvey E. More*, for plaintiff.

*David W. Ketler*, for defendant.

McKAY, J., November 23, 1962.—This is an action in assumpsit, tried before the court without a jury by agreement of counsel, upon appeal from an award of a board of arbitrators who decided it in favor of defendant. In it plaintiff seeks to recover from defendant $452.33, a balance due for hauling three loads of steel from the Shenango Valley to certain manufacturers in Connecticut. Defendant does not contest plaintiff's claim as such, but raises a counterclaim in the amount of $500, based upon the alleged failure of plaintiff to protect one of the loads from water damage, whereby the consignee rejected that load to defendant's damage. The amount of $500 represents the balance of defendant's loss after reselling the steel and receiving money from an insurance company which protected it for such damages subject to a $500 deductible clause.

The action as brought by plaintiff was founded upon a lease agreement dated October 20, 1960, which purported to cover in general the leasing of plaintiff's equipment with driver to defendant for hauling purposes. Defendant corporation conducts a general hauling business from its place of business in the City of New Castle, Pennsylvania. Plaintiff is the owner of tractors and trailers which it leases with a driver from time to time to haulers such as defendant under lease agreements prescribing the rights and obligations of the parties. The lease agreement set forth in the complaint provided, among other things, that plaintiff was to pay for all damages to a cargo caused by the fault or

neglect of plaintiff that were not covered by defendant's cargo insurance.

The particular trip in which the cargo was damaged, however, was covered by another lease which applied only to that trip. This lease stated that plaintiff "shall be responsible for water damage".

At the trial it was stipulated that the trip lease and not the general lease was the pertinent contract which controls the present case. Accordingly, one question before the court is whether the damage to the cargo was "water damage".

### Findings of Fact

1. On Saturday, December 17, 1960, under instructions from defendant, plaintiff's driver, Howard L. McConnell, supervised the loading of plaintiff's trailer with a load of zinc-coated steel conduit pipes for delivery by plaintiff from the Shenango Steel Company factory at Sharpsville, Pennsylvania, to Ockville (near Bridgeport), Connecticut.

2. The trailer was a flat-bottom, open top, with a bulkhead covered by a canvas top open at both ends.

3. The steel was first covered with tar moisture-proof paper, which in turn was covered by tarpaulins secured by a chain.

4. As so loaded the steel was protected from rain, snow or any other form of water except condensation.

5. The same day McConnell telephoned to J. H. Wagner at New Castle, the terminal manager of defendant, who instructed him to bring the load to New Castle and that, as soon as the license plates arrived for the proposed trip to Connecticut, McConnell could leave with his load.

6. On Sunday, December 18, McConnell delivered the load to New Castle and on the same day he contacted another agent of defendant in charge of the office to inquire if the license plates had arrived, but was informed that they had not.

7. The issuance of appropriate license plates was necessary in order to legally transport the load on the highway in the State of Connecticut.

8. On Monday, December 19, McConnell entered into a trip lease covering the proposed trip. This agreement provided "The party of the second part (William Barris, plaintiff) shall be responsible for water damage." The equipment and cargo remained in New Castle pending the receipt of the license plates by defendant.

9. On December 20, McConnell left with his load for Connecticut and on the following day arrived at the terminal of the consignee, Scofield Manufacturing Company.

10. During the time that the load remained in New Castle the temperature was below freezing and the canvas was stiff. By the time that it arrived in Connecticut, the temperature there was well above freezing and it rained. As a result of this change in weather conditions, the steel upon arrival contained ice and was wet from frost, causing to to be corroded and unfit for its purpose. The tarpaulin and paper covering it, however, were still dry and no outside water had reached it.

11. As a result of the unmarketable condition of the steel, the consignee refused to accept it. Defendant sold the steel for other purposes and was reimbursed by its insurance company for all of its loss on the sale to the consignee except for $500, the deductible portion of its insurance.

12. The damaged condition of the steel upon arrival at its destination was not water damage within the meaning of the trip lease.

### Discussion

The first question is what was the intention of the parties by the words "water damage" in the trip lease.

There is nothing in the lease itself which assists the court in construing these words. The intention, therefore, must be obtained from the attendant circumstances which are indeed meager. It must be conceded that water is water, whether it results from an outside source such as rain or snow or from condensation due to change in temperature. However, the water hazard which one would normally expect in the transportation of a cargo by truck and trailer would be rain or snow. To protect the cargo against this type of water, plaintiff's driver saw to it that the load was carefully wrapped with tarpaper and tarpaulin, the latter secured by chains fastened to the truck. As a result of this precaution, neither rain nor snow could have reached the steel, and upon uncovering the load at the end of the trip, both the tarpaulin and tarpaper were found to be, in fact, dry.

While wetness due to condensation is, as has been stated, in a sense water damage, it would seem that were this peculiar type of water damage to be anticipated, the lease would have contained an added phrase "or wetness due to condensation". This type of damage could possibly have been prevented by providing for a space where air could circulate under the tarpaulin, but this would require special precautions different from those which would protect the material from ordinary water damages.

It is our opinion that the precautions taken by the driver to keep out rain and snow were all that the trip lease contemplated; and that the term "water damage" meant damage due to rain or snow reaching the steel from the outside. This conclusion is buttressed by the fact that the type of damage done by condensation is different from that done by water in the ordinary sense. The latter takes the form of rust, whereas the former consists of the formation of a powdery substance on the material which eats into and disintegrates it.

Apart from these conclusions, there was the conduct of defendant itself which brought about the damage due to the moisture from condensation. Plaintiff was prepared to leave New Castle with his load on Sunday morning, December 18, 1960, but was required to wait until Tuesday, December 20, because defendant had not fulfilled its obligation in supplying him the license plates which were necessary in order for his trip through Connecticut to be legal. Condensation damage was most probably due to the fact that the loaded steel remained for two days in a freezing climate before being unloaded in the more temperate climate which prevailed in Connecticut.

In our opinion, even if the moisture due to condensation were construed as "water damage", the parties did not contemplate water damage due to the fault of defendant, but rather due to the fault of plaintiff or to some cause not the fault of either party. Further, the burden of proof throughout was upon defendant to establish every fact necessary for it to recover under its counterclaim, and if instead of the evidence favoring plaintiff, as we believe it does, the scales were merely evenly balanced, our decision would be the same.

### Conclusions of Law

1. The words "water damage" contained in the lease arrangement dated December 19, 1960, are to be construed so as to exclude moisture due to condensation.

2. Defendant has not sustained the burden of proof in establishing its counterclaim.

3. The award of the board of arbitrators must be reversed.

4. Plaintiff is entitled to recover on its cause of action set forth in the complaint the sum of $452.33, plus interest at the rate of six percent per annum from December 31, 1960, in the amount of $51.49, for a total of $503.82.

*Order*

Now, November 23, 1962, it is ordered 'that the award of the board of arbitrators is reversed and the decision of the court is in favor of the plaintiff against the defendant in the amount of $503.82.

It is further ordered that unless exceptions are filed to this decision within 30 days after service of the notice of this order by the prothonotary, the prothonotary shall enter judgment in favor of plaintiff and against defendant in that amount.